Charles Mednikow v. Commissioner. Charles Mednikow and Georgia Mednikow v. Commissioner.
Mednikow v. Commissioner
Docket Nos. 34757, 36261, 36262.
United States Tax Court
1953 Tax Ct. Memo LEXIS 135; 12 T.C.M. (CCH) 973; T.C.M. (RIA) 53301; August 28, 1953
*135 Julian S. Bensinger, Esq., 81 Madison Building, Memphis, Tenn., and W. Thomas Williams, Esq., for the petitioners. Charles R. Hembree, Esq., for the respondent. JOHNSON Memorandum Findings of Fact and Opinion JOHNSON, Judge: These proceedings were consolidated for hearing and involve deficiencies in income tax as follows: Docket
No.
Petitioner
Year
Deficiency
34757
Charles Mednikow
1945
$8,777.59
1946
6,282.23
36262
Charles Mednikow
1947
7,105.41
36261
Charles Mednikow and
1948
2,048.66
Georgia Mednikow
1949
2,287.50
The issue is whether the respondent erred in disallowing as a deduction in each taxable year a portion of the amount claimed by the petitioners for traveling expenses. Findings of Fact The petitioners are husband and wife residing in Memphis, Tennessee. They filed their returns for the taxable years with the collector of internal revenue for the district of Tennessee, a joint return having been filed for the years 1948 and 1949. Georgia Mednikow had no income in any of the taxable years. The expenses involved in the question at issue were those of Charles Mednikow, who will be referred to hereinafter *136 as the petitioner. During the taxable years and for many years prior thereto petitioner was in the jewelry business and, as a salesman of jewelry during the taxable years, had active accounts in about 104 cities located in the southern, southeastern and southwestern sections of the United States. He attended jewelry shows and conventions each year, including the National Jewelry Show in New York City and the National Jewelry Convention in Chicago. During the taxable years petitioner was president of Mednikow and Paul, Inc., Memphis, Tennessee, a corporation engaged in wholesale jewelry business, and owned one-half of its capital stock. He was one of the corporation's two traveling salesmen and as compensation for his services as an executive and salesman, including buying, received a salary and an expense allowance of $125 per week when traveling. Petitioner represented A. Edward Fisher & Company, Inc., a diamond manufacturer, and the Savoy Watch Company, a manufacturer of Swiss watches, both of New York City, as a salesman on a commission basis without any allowance for traveling expenses. During two or three months of each of the taxable years 1947, 1948 and 1949, petitioner *137 sold at his own expense diamond watches for S. Mettler on a commission basis. He also bought and sold diamonds for his own account. About one-half of the time spent by the petitioner while traveling was devoted to representation of Mednikow and Paul, Inc. Petitioner spent from ten days to six weeks each year in New York City. During 1945, 1946 and 1947 it was necessary for him to go there more often to purchase goods for Mednikow and Paul, Inc., and see buyers. At times petitioner remained in New York City from three to four weeks after the jewelry show closed to sell his merchandise to buyers who were in the city for the purpose of purchasing jewelry. Before going to New York City petitioner would notify his customers when he would be there and where he could be located. He maintained a suite of rooms in a hotel for the display of his merchandise and for the convenience of his customers. During the taxable years petitioner generally used his own automobile to travel on business trips. He employed a chauffeur to drive the car on the trips. Petitioner carried with him on business trips two sample cases and personal baggage in 1945, 1946 and 1947, and six more jewelry bags in 1948 *138 and 1949. Petitioner kept expense books, one for each month, during the taxable years, in which he made entries for traveling expenses, including amounts for entertainment of and gifts for clients. Whenever invoices were obtained for expenses the entries were made therefrom. Numerous expenses were incurred for which no bills or receipts were obtained. Memoranda of amounts for such items of expense were generally made on envelopes or other papers in petitioner's possession at the time and later, at times as long as three or four weeks after the expense was paid, entries were made therefrom in the monthly expense books. These expense books, which contained many erasures and alterations, were used by petitioner's accountant to determine the amount of his traveling expenses each year. The expense books for 1945 were lost in 1948. The accountant who prepared petitioner's return requested him to maintain an accurate record of his traveling expenses. During the taxable years petitioner made the following sales, cents omitted: 1945
1946
1947
1948
1949
A. Edward Fisher & Co.
$580,705
$563,319
$325,179
$315,023
$379,072
Savoy Watch Co.
104,900
152,949
154,781
130,137
76,424
S. Mettler
15,673
9,115
17,250
Mednikow and Paul
701.623
779,060
509,028
606,467
551,975
Own account
15,933
20,969
7,388
173
*139 The sales of petitioner were made in a competitive market. It was the general practice of jewelry salesmen to entertain and make gifts to customers and their employees who were in a position to advance the retail sale of their line of goods. Petitioner, in an effort to retain and promote good will and make sales, frequently engaged in the custom. The entertainment provided by petitioner included dinners, liquor served in his hotel suite, attending shows, athletic events and night clubs. At times wives of customers and a competing salesman were in the group being entertained. During 1945 and 1946 there was a scarcity in the general jewelry line, except gold rings and diamonds. Invoices in the possession of petitioner for traveling expenses and the expense books kept by him disclose that he spent 277, 288, 291, 258 and 230 days away from Memphis, Tennessee, during the respective taxable years. Petitioner used his sample cases every day when traveling. Provisions of the policies of insurance covering the cases required that they be kept in a valut at night. Petitioner gave hotel employees tips to handle his baggage. Petitioner estimated the amount spent each day for tips and cigars *140 purchased to give customers. In his returns for the taxable years petitioner reported in addition to salary from Mednikow and Paul, Inc., commissions from sales and profit on sales of diamonds, and claimed deductions for traveling and other business expenses, of which respondent allowed and disallowed amounts as follows: 1945
1946
1947
1948
1949
Commissions
$43,336.50
$46,491.44
$32,698.26
$26,323.68
$21,587.73 *
Diamond sales
846.74
1,192.02
450.08
15.89
Total
$44,183.24
$47,683.46
$32,698.26
$26,773.76
$21,603.62
Expenses **
$19,572.80
$19,731.45
$20,622.18
$17,210.46
$14,850.54
Allowed
$ 8,105.51
$11,314.23
$ 9,534.62
$12,574.44
$ 9,282.16
Disallowed
$11,467.29
$ 8,667.22
$11,087.56
$ 4,636.02
$ 5,568.38
The amounts allowed consist of the following items: 1945
1946
1947
1948
1949
Hotel bills
$1,011.95
Hotel rooms
2,274.12
$2,405.42
$2,001.59
$2,572.30
$1,751.46
Meals
4,103.23
798.38
993.47
562.42
Insurance
445.06
Telephone and telegraph
271.10
178.47
197.27
102.40
Gas and oil
270.50
498.49
Repairs
460.61
576.21
Transportation
535.70
386.51
675.87
538.15
Storage
190.00
Entertainment
125.84
494.95
Chauffeur
1,661.50
2,009.28
2,069.60
2,318.06
2,638.90
Miscl.
1,320.23
765.55
177.26
368.42
55.37
Laundry
133.12
132.64
131.64
Auto expense
1,797.91
1,828.78
1,568.78
Depreciation
926.22
926.22
926.22
Edward Fisher & Co.
1,065.56
2,561.41
1,006.82
*141 The allowances made by the respondent were limited to expenses for which petitioner had hotel bills or receipts and other expenses for which receipts ordinarily would not be obtained. He ignored the expense books maintained by petitioner for the years 1946 to 1949, inclusive, because of the changes, erasures and additions appearing therein. During 1946 petitioner claimed the amount of $234.82 as a deduction for funeral expenses of his chauffeur. The amount was disallowed by the respondent in connection with his determination of the deficiencies. Opinion The primary difference between the parties under the issue is the amount of deductible ordinary and necessary business expenses paid by petitioner in carrying on his selling operations. The petitioner contends that for 1945, the expense books for which year were misplaced in 1948, and, therefore, not available as evidence, we should allow the gross amount of $19,572.80, as claimed in his return. For other years he argues that we should accept the amounts shown in his expense books, which are in substantial accord with the returns. The respondent asks that his determination of allowable expenses each year be sustained, contending, *142 in substance, that the expense books have no probative value and that no proof was made that the amounts disallowed were incurred in business transactions. The parties are in agreement on the amounts deductible for wages of petitioner's chauffeur, hotel rooms, railroad and air transportation, insurance, depreciation on the automobile used in the business, and the reimbursement received from Mednikow and Paul, Inc. The alleged expenses for 1946 include $234.82 for amounts paid out in connection with the death of petitioner's chauffeur. No evidence was offered to establish that the expense was either ordinary or necessary in the operation of petitioner's business. Accordingly, the action of respondent in disallowing the deduction is sustained. The basis for the deductions claimed each year was the expense books kept by petitioner. The books for 1945 were not available for audit when the return was examined and, as a result, amounts not substantiated by receipts were disallowed for lack of proof. For the remaining years the books were available for audit, but the respondent refused to accept them as proof of payment unless substantiated by invoices or other evidence. The result *143 was a disallowance each year of amounts for lack of proof of payment as expenses of business. The respondent was justified in declining to accept the books as proof of payment. The books contain numerous alterations in amounts in favor of petitioner and entries for personal expenses incurred during a residence of himself and his wife of about three weeks at a hotel in Hot Springs National Park, Arkansas, during a period of illness, and expenses for his wife on a trip to New York City lasting about seven weeks, commencing in December 1944, which reflect doubt on the bona fides of other entries in the books. The hotel bill for the period of the nonbusiness trip to Arkansas was $635.70. Other amounts, totaling about $500, were entered in the expense books as business expenses during the same period, $135.50 of which was for entertainment. The expense books used by petitioner are about 2 1/2 by 5 inches and contain a printed page of items of expense for each day of the month. Petitioner testified that he carried a current book in a pocket at all times but made no entries in it as the expense was paid; instead he would make a notation on an envelope or other paper of an amount and then, *144 when convenient, make entries in the books from the memoranda. At times he delayed copying amounts into the expense books until from two to four hours of work would be required to make the entries. The probability of error in the unsystematic and loose method the petitioner followed is very great. His failure to make accurate records, in spite of the means available to him at all times to do so, and the admonition of the accountant who prepared his returns, discloses lack of a real desire to make a record of his actual business expenses. The evidence establishes that it was the consistent business policy of petitioner to entertain and make gifts to his customers to maintain and create good will and make sales. His competitors pursued the same practice. Most of the differences in amount between the parties concerns an allowance for such expenditures and meals. Lacking expense books for 1945, showing amounts for such expenditures, petitioner claims no specific amount as having been spent in that year for such purposes. The respondent allowed only $125.84 for entertainment and nothing for gifts, unless some additional amounts for the items are concealed in his allowance for hotel bills, *145 other than for rooms, and under the heading of "Miscl." He allowed about $1,012 for meals. For the subsequent years petitioner claimed as deductions for meals and entertainment and gifts, and the respondent allowed, amounts as follows, cents omitted: 1946
1947
1948
1949
MEALS
Claimed *
$7,439
$6,765
$4,876
$4,640
Allowed **
4,103
798
993
562
ENTERTAINMENT
AND GIFTS
Claimed
$3,579
$3,297
$ 755
$ 665
Allowed
495
None
None
None
The circumstances of the case require that the expenditures for meals, entertainment and gifts be consolidated for the allowance of an amount as a deduction. We are convinced from the evidence that amounts were spent in excess of the allowances made by the respondent, except for the year 1946, but the facts do not disclose the actual sum. Accordingly, the respondent's allowance for meals, entertainment and gifts in 1946 will not be disturbed. Applying the rule established by , to the remaining taxable years, we have *146 concluded that $4,500 in 1945, $4,300 in each of the years 1947 and 1948, and $3,600 in 1949 fairly represent the amounts expended by the petitioner for such purposes and are deductible as ordinary and necessary business expenses. The evidence does not justify any disturbance of the amounts allowed for the operation of the automobile used by petitioner. A similar situation prevails with respect to the remaining items of expense. The claim of petitioner for 1945 is not itemized. For that year the respondent allowed $1,320. For 1946 petitioner claimed about $1,475 and was allowed about $1,225. For failure to show error, the respondent's determinations for those years are sustained. For the years 1947, 1948 and 1949 the petitioner is claiming amounts averaging about $1,300 per year and the respondent allowed amounts averaging about $490 per year. We regard the amounts allowed by the respondent as inadequate. In the absence of proof of the actual amounts expended, we conclude that $1,300, $1,200 and $1,150 constitute fair amounts for deduction purposes in the respective years 1947, 1948 and 1949. Decisions will be entered under Rule 50. Footnotes
*. Plus $3,550 which A. Edward Fisher & Co., Inc., deducted for expense. ↩
**. Less reimbursement of $5,500, $5,500 [correct reimbursement was $5,750], $5,125, $4,875 and $4,250, respectively, from Mednikow and Paul, Inc.↩
*. Includes some unascertainable amount for entertainment. ↩
**. The evidence does not disclose to what extent it includes entertainment.↩